IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**CATHERINE DAVIS**                                                        **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 5:11-cv-132-CWR-LRA**

**RIVER REGION HEALTH SYSTEMS**                              **DEFENDANT**
**A/K/A VICKSBURG CLINIC A/K/A**
**VICKSBURG HEALTHCARE, LLC**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant River Region Health Systems ("River Region")'s Motion for Summary Judgment, Docket No. 60, its supporting brief, Docket No. 61, and its reply brief Docket No. 64. Plaintiff Catherine Davis ("Davis") has filed her response, Docket No. 63, and the matter is ready for review. The Motion is GRANTED IN PART and DENIED IN PART.

**I. Factual and Procedural History**

Davis worked as a surgical technologist at River Region for twelve weeks spanning September 2010 to December 2010. Shortly after she was hired, Davis was assigned to work alongside James Lynn ("Lynn"), another surgical technologist who had worked at River Region for more than forty years. Davis alleges that Lynn began harassing her in October 2010 with "sexual advances and offensive comments." Docket No. 63 at 1. On three separate occasions, Lynn reported the "unwanted and offensive" actions to her immediate supervisor, Sandy Agnone ("Agnone"). *Id.* at 1-3. Agnone dismissed the allegations, telling Davis that she was hired because of her looks, and suggesting that she "allow Mr. Lynn to rub on her in order to alleviate the hostility." *Id.* at 3. Agnone continued to place Davis with Lynn, despite Davis's requests that she not be placed with him. After he learned that Davis had reported him, Lynn allegedly "escalated his offensive comments and sexual advances" toward Davis, and used his advanced

tenure at the hospital to intimidate her. *Id.* at 2. At the same time, Agnone used her position of authority to ridicule Davis for making complaints. *Id.* at 3. Davis stopped working at River Region because the stress of working at the hospital led her to have an anxiety attack and her physician told her that continuing to work at River Region posed "serious health risks." *Id.* at 4.

On December 17, 2010, Davis was disciplined for failing to comply with River Region's absence policy; she received a written warning and verbal counseling. Docket No. 61 at 3. Afterward, Davis requested and received an extended leave of absence. *Id.* at 1. She submitted her resignation letter to River Region in January 2011, citing "medical reasons." *Id.* Davis did not report the harassment to the Human Resources Department, despite River Region's policy instructing its employees to do so. *Id.* Five months later, Davis filed a Charge of Discrimination with the EEOC, giving River Region's Human Resources Department its first notice of Davis's harassment claims. *Id.* at 2.

In September 2011, Davis filed suit in this Court claiming unlawful sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, along with several state law claims. River Region has moved for summary judgment, arguing that all of Davis's claims fail as a matter of law. Davis opposes the motion in its entirety. This Court has personal and subject matter jurisdiction and is ready to rule.

## II. Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When confronted with these motions, the Court focuses on "genuine" disputes of "material" facts. A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the

evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). The Court will "view the evidence and draw reasonable inferences in the light most favorable to the non-movant," *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011) (citations omitted), but unsubstantiated assertions are not competent summary judgment evidence, *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### III. Law and Analysis

A.  **Hostile Work Environment and Constructive Discharge**

Davis has brought both a hostile work environment claim and a constructive discharge claim. To establish hostile work environment, Davis must demonstrate that "(1) she is a member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of [her] employment and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005). Davis bears the burden of producing evidence at trial that supports each element of her hostile work environment claim. Davis has not met that burden because she has failed to satisfy the fifth element of her prima facie case.

The Fifth Circuit holds that before Davis can establish the fifth element of her prima facie case, she "must first show that she 'took advantage of [the] corrective opportunities provided by the employer.'" *May v. FedEx Freight East, Inc.*, 374 F. App'x 510, 512 (5th Cir. 2010) (per

3

curiam) (quoting *Harvill*, 433 F.3d at 437). This holding alludes to the long-established *Ellerth/Faragher* affirmative defense to hostile work environment claims; this defense is also available to claims of constructive discharge. *See McRunnels v. Calsonic Kansei N. Am., Inc.*, 5:07-CV-113, 2008 WL 4965307, at *11 (S.D. Miss. Nov. 18, 2008) ("because Title VII contemplates the parties' efforts at conciliation as an alternative to litigation, the plaintiffs' failure to allow [the employer] an opportunity to remedy the situation before they abandoned their jobs was unreasonable as a matter of law and is fatal to their claim of constructive discharge.") (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998); *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 332 (5th Cir.2004)).

Under the *Ellerth/Faragher* defense, an employer should not be held liable for severe or pervasive sexual harassment if it can show that: "(1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Casiano v. AT&T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000).

River Region invokes the *Ellerth/Faragher* defense by claiming that it did, in fact, exercise reasonable care by having in place a policy that provided corrective opportunities to Davis. Therefore, in order to survive a motion for summary judgment, Davis must demonstrate that there is a genuine dispute of material fact on the question of whether River Region can satisfy both prongs of the *Ellerth/Faragher* defense.

With respect to the first prong, River Region asserts that it had an established policy that directed employees to report incidents of sexual harassment to its Human Resources Department, pursuant to certain procedures. It has submitted copies of the policy, "Prohibition Against Sexual and Other Harassment," as provided in its Employee Handbook:

> Prohibition Against Sexual and Other Harassment
> It is this facility's intention to provide a working environment in which employees are free from discomfort or pressure resulting from jokes, ridicule, slurs, threats and harassment relating to race, color, gender, sexual orientation, gender identity, religion, national origin, age, disability, veteran status or other legally protected characteristics.
>
> * * *
>
> If you feel you have been a victim of sexual harassment or any other form of harassment, or if you witness the harassment of others, *you must immediately report your concerns with the Human Resources Department*. Each complaint will be treated as confidentially as possible, subject to state and federal law and an incident of harassment or participation in an investigation or proceeding relating to such a report, is strictly prohibited. Each complaint of harassment will be promptly and thoroughly investigated. Any employee who has found to have engaged in unlawful harassment, or to have otherwise violated this policy, is subject to disciplinary action, including termination of employment.

Docket No. 60-1 at 70-71, 109-10 (emphasis added). River Region supplemented this policy by providing a Confidential Disclosure Reporting Program Hotline, whereby employees could call a 1-800 number to report violations of hospital policies or federal, state, and local laws. Employees were assured that the reports would be kept in confidence, and were even allowed to report anonymously. Details were also included in the Employee Handbook:

> Confidential Disclosure Program Hotline
> A Confidential Disclosure Reporting Program Hotline has been established by CHS for reporting any known or suspected violations of:
> []     any federal, state or local rules, laws or regulations,
> * * *
> Employees are encouraged to immediately alert CHS management to any violations or suspected violation of these standards by calling the Confidential Disclosure Reporting Program Hotline at 800-495-9510 or by writing Community Health Systems, Attn: Corporate Compliance Officer (Confidential), P.O. Box 689020, Franklin, TN 37067.
>
> You are not required to identify yourself when reporting alleged or suspected violations. No effort will be made to determine your

5

>     identity unless you admit to engaging in improper conduct. If you
>     choose to remain anonymous, you must describe the conduct or
>     incident in sufficient detail to enable CHS to investigate the matter.

*Id.* at 77.

To this point, Davis has failed to challenge the existence of such a policy at River Region. And there is undisputed evidence that Davis was aware of this policy and understood its requirements. Davis signed an "ACKNOWLEDGENT OF HARASSMENT TRAINING" on September 13, 2010, where she affirmed that she "attended harassment training" and that she "underst[ood] [River Region]'s policy on harassment." *Id.* at 136. Following her training, Davis took a quiz on the substantive material covered in that session. The quiz asked Davis if she knew what to do "If you believe you are a victim of discrimination or harassment at your workplace," and she correctly chose "Report the situation according to company policy," from several answers presented. *Id.* at 165. River Region's policy plainly explains those reporting procedures; it tells employees who feel that they have been victims of sexual harassment to "immediately report [] concerns with the Human Resources Department,"  and assures victims that their complaints will be kept in confidence and "promptly and thoroughly investigated." *Id.* at 70-71, 109-10. Therefore, Davis has failed to create a genuine dispute of material fact concerning the first prong of the *Ellerth/Faragher* defense.

With respect to the second prong, River Region must show that Davis "unreasonably" failed to avail herself of the corrective opportunities that it provided. "An employee's decision to refrain from informing the employer about the harassment will be excused 'once it becomes objectively obvious that the employer has no real intention of stopping the harassment,' as such reporting is 'wasted motion.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 655-56 (5th Cir. 2012) (quoting *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 300–01 (5th Cir. 2001)).

Davis contends her decision to not follow River Region's policy, and to instead report the harassment to her immediate supervisor, Sandy Agnone, was reasonable because it was a decision designed "to avoid harm." Docket No. 63 at 11. In support of this claim Davis analogizes to *Watts v. Kroger Co.*, 170 F.3d. 505 (5th Cir. 1999). In that case, a former grocery store employee "filed a union grievance rather than going through [her employer]'s sexual harassment policies." *Id.* at 511. Watts claimed that, when she filed that grievance, her "store manager was immediately provided a copy . . . and [she] understood that human resources would have known about her allegations." *Id.* at 508. Emphasizing the fact-specific nature of the reasonableness question, the Fifth Circuit found that "under the facts and circumstances of this case . . . . both the employer and union procedures [were] corrective mechanisms designed to avoid harm." *Id.* at 511.

Davis argues that her decision was reasonable because, like Watts, she declined to follow company policy in order to avoid harm. But this argument fails to consider the stark factual differences between *Watts* and the instant case. In *Watts*, it was reasonable for the employee to not follow her employer's policy because the reporting mechanism that she used would have accomplished the same goals as the employer's policy—namely, notifying a high level supervisor and the employer's human resources department—so that the employer would then have a chance to remedy the situation.

The implications of failing to follow company policy are quite different in Davis's case. According to Davis's own allegations, Agnone failed to do anything to prevent the harassment despite Davis's reports to her on three separate occasions. Moreover, the comments Agnone made in response to Davis's reports suggest that, rather than helping to avoid harm, Davis's failure to follow her employer's policy may have exacerbated it. *See Lauderdale v. Texas Dep't*

7

*of Criminal Justice, Institutional Div.*, 512 F.3d 157, 164 (5th Cir. 2007) (ruling that a sexual harassment victim acted unreasonably when she failed "to pursue any other avenue available under the [employer's] policy after [an immediate supervisor] explicitly indicated his unwillingness to act on her complaint."). River Region's Human Resources Department did not learn about Davis's problems until after she filed a charge of discrimination with the EEOC; it began an investigation sometime thereafter. Docket No. 60-3 at 1. Davis's sincere belief that Agnone was in the best position to help her avoid harm is not sufficient to justify her failure to report the harassment, pursuant to company policy. Even if reporting to high-ranking supervisors or to River Region's Human Resources Department made her uncomfortable, the hospital's anonymous reporting hotline provided Davis with the opportunity to report her grievances in confidence. Davis's argument ignores the fact-specific nature of the reasonableness inquiry. Under these facts, Davis unreasonably failed to take advantage of River Region's harassment policy.

Based on this evidence, Davis has failed to create a genuine dispute of material fact on either prong of River Region's *Ellerth/Faragher* defense. River Region may use this defense on both Davis's hostile work environment and constructive discharge claims. Therefore, summary judgment will be entered in River Region's favor on each of these claims.

**B.      Retaliation**

"To establish a prima facie case of retaliation under Title VII . . . a plaintiff must show that (1) she engaged in activity protected by Title VII; (2) the employer subjected her to an adverse employment action; and (3) 'a causal connection exists between the protected activity and the adverse employment action.'" *Bennett v. GEO Group, Inc.*, 4:10-CV-133, 2011 WL 5864674, at *4 (S.D. Miss. Nov. 22, 2011) (citations omitted). The parties agree that Davis

satisfied the first element. The questions that remain are whether River Region subjected Davis to an adverse employment action, and whether a causal connection exists.

In order to prove an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009) (per curiam) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)) (quotation marks omitted). Several fact-specific considerations are relevant to assessing whether the plaintiff has created a material fact dispute on the question of whether there "was a retaliatory measure against her . . . and, if so, whether it rises to the level of an 'adverse employment action.'" *Id.* at 507.

Davis asserts that she experienced three different types of adverse employment actions. First, she argues that being "berated and insulted by her supervisor, Ms. Agnone, in front of her co-workers" constituted an adverse employment action. Docket No. 63 at 13. She explains that Agnone changed her "'call' schedule without notice," placing Davis on duty for eighteen days in one month, something Davis described as "an extremely high number of days for someone in [her] position." *Id.* at 12. In addition, Agnone prevented Davis's co-workers from covering for her, forcing Davis to miss "necessary and important meetings regarding her special needs son." *Id.* Agnone also said "derogatory and hurtful things to Ms. Davis in front of other co-workers," denied Davis her lunch breaks, interfered with requests for time off, and gave "unfounded disciplinary notices." *Id.* Second, Davis argues that the Employee Disciplinary Action Notice that she received on December 16, 2010 constituted an adverse employment action. *Id.* at 14. Finally, she reasserts her previous argument of constructive discharge, arguing that the

constructive discharge constituted an adverse employment action for the purposes of the retaliation analysis. *Id.* at 15. This last argument will not be considered because the question of constructive discharge is no longer at issue.

River Region responds by asserting that Davis has only alleged "general working grievances," and that such grievances are not sufficient to support a retaliation claim. Docket No. 61 at 13. Additionally River Region argues that Davis's "one written warning is also insufficient to support a claim for unlawful retaliation." *Id.* at 15. The case law, however, fails to support either of River Region's contentions. River Region further argues that even if Davis made a prima facie showing that she suffered an adverse employment action, it had a legitimate non-retaliatory reason for issuing the Employee Disciplinary Action Notice because Davis "fail[ed] to give sufficient notice of a planned absence, per company policy." Docket No. 61 at 19. Notably, River Region does not argue that there were legitimate non-retaliatory reasons that caused Davis to experience any of the other harms that it calls "general working grievances." *Id.* at 13.

Context matters. In cases such as this, the significance of any given act of retaliation will often depend upon the particular circumstances. *Burlington Northern*, 548 U.S. at 69. Taken individually, it might be that some of Davis's assertions would not amount to a materially adverse employment action; while others may. In *Burlington Northern*, the Supreme Court explained that a schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children; therefore, the focus must be on the materiality of the challenged action and the perspective of a reasonable person in plaintiff's position. *Id.*

When considering Davis's assertions in the aggregate, however, a jury may determine that the challenged actions were related to the terms or conditions of Davis's employment and

that they were materially adverse. *See, e.g.*, *Hicks v. Barnes*, 593 F.3d 159, 165 (2d Cir. 2010) (relatively minor acts of retaliation can be sufficiently substantial in gross as to be actionable). In this case, Davis was on the job a mere twelve weeks, and early into her tenure reported *multiple allegations of sex harassment* to her immediate supervisor, Sandy Agnone, who responded to the allegations in ways that could be construed as indifferent at best, and degrading at worst. Jurors could reasonably infer that Agnone, who had direct knowledge of Lynn's harassing behavior, responded to Davis's complaints in ways that altogether amounted to materially adverse retaliatory behavior, which could "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Donaldson*, 335 F. App'x at 506.

Davis has provided ample evidence of retaliatory behavior and its subsequent effects. First, her own testimony indicates that Agnone's inaction after multiple reports, coupled with continued harassment from Lynn, actually dissuaded her from making further charges of discrimination against River Region. She attests the following:

> James harassed me repeatedly. Repeatedly I told him to get lost. Repeatedly I spoke with my supervisor about it. James was not reprimanded to the best of my knowledge. We were not called in a conference. Nothing was ever done about it. *When my supervisor [Ms. Agnone] told me to let him touch me, let him rub on me and he would treat me nicer*, to me, that was a very strong indication that whatever James did to me at River Region was more than acceptable.

Davis Dep. 134:4-12 (emphasis added).

Second, the degree to which Davis's work schedule was altered, without notice, shortly after she reported sexual harassment, suggests that she was singled-out for reporting Lynn's harassing behavior. Davis's sworn testimony asserts that she was placed on "call" duty for eighteen days in one month, and that Agnone prohibited co-workers from covering for her despite the fact that such an assignment was "completely out of the norm for someone in

11

[Davis's] position," even though it was generally accepted practice at River Region for co-workers to cover for one-another. Docket No. 63-1 at 5. Davis contends that the Employee Disciplinary Action Notice was part of this pattern of behavior. In light of proximate events, a jury could reasonably conclude that River Region's explanation for issuance of the Employee Disciplinary Action Notice is pretextual, and that a causal connection exists between Davis's reports of harassment and the issue of the disciplinary notice.

Finally, *Donaldson* deemed relevant "the severe effect that the [alleged retaliatory] incident" had on the plaintiff. 335 F. App'x at 507. Davis maintains that Agnone's alleged retaliatory behaviors left her in a "severely weakened" emotional state, "to the point that she had to start leaving patients to go to the bathroom and cry." Docket No. 63 at 3. She was also treated in a hospital emergency room for ongoing "anxiety attacks and migraine headaches" that tests attributed to "her unstable working conditions." *Id.* These effects, if proven at trial, could reasonably be considered "severe" for purposes of the jury's retaliation analysis.

In light of the evidence presented, Davis has identified a genuine dispute of material fact regarding whether River Region engaged in retaliatory measures against Davis, rising to the level of an adverse employment action. *Donaldson*, 335 F. App'x at 507. Accordingly, River Region's motion for summary judgment on the retaliation claim is denied.

**C.     Davis's State Law Claims**

First, Davis's claims for negligence, gross negligence, negligent infliction of emotional distress, and negligent hiring, supervision, and retention, are barred by Mississippi's workers compensation statute. *See, e.g.*, *Ramirez v. L-3 Communications Vertex Aerospace, LLC*, 3:11-CV-297-CWR-LRA, 2012 WL 1033497, at *3 (S.D. Miss. Mar. 27, 2012) (citations omitted). As a matter of law River Region is entitled to summary judgment on these claims.

Second, Davis's claim for intentional infliction of emotional distress is unavailing. As the Fifth Circuit has acknowledged, under Mississippi law,

> it is difficult to prove intentional infliction of emotional distress: It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*

*Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 548 (5th Cir. 1996) (emphasis in original). Moreover, "[t]he courts have 'repeatedly stated that a claim for intentional infliction of emotional distress will not lie for mere employment disputes.'" *Gardner v. Swedish Match N. Am., Inc.*, 2:04-CV-337, 2006 WL 2483240, at *4 (S.D. Miss. Aug. 28, 2006) (quoting *Jenkins v. City of Grenada, Miss.*, 813 F. Supp. 443, 447 (N.D. Miss. 1993)). Mere employment disputes include harassment claims. *See Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 362 (Miss. 2004) ("The Southern District of Mississippi and the Fifth Circuit, applying Mississippi law, have held that sexual misconduct falls outside the course and scope of employment."). Therefore, the Court finds that there is no genuine issue of material fact on the question of whether Davis can recover for her intentional infliction of emotional distress claim. River Region is entitled to summary judgment on this claim.

Finally, Davis claims that River Region should be held liable for Lynn's alleged assault under the theory of respondeat superior. Under Mississippi law,

> An employer is liable for the torts of his employee only when they are committed within the scope of employment. To be 'within the scope of employment, the act must have been committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business.

> Also included in the definition of course and scope of employment are tortious acts incidental to the authorized conduct.

*Adams v. Cinemark USA, Inc.*, 831 So. 2d 1156, 1159 (Miss. 2002) (citations and internal quotation marks omitted). But Davis has failed to create a genuine dispute of material fact on the question of whether Lynn's assault was committed within the scope of employment. Lynn's conduct "was not authorized or in furtherance of [River Region]'s business." *Id.* Nor was Lynn's intentional assault, if any, on a co-worker "incidental" to his employment. *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 464 (5th Cir. 2005). Therefore, River Region is entitled to summary judgment on this claim.

### IV. Conclusion

For these reasons, River Region's Motion is GRANTED on Davis's hostile work environment, constructive discharge, and state law claims; and DENIED on Davis's claim of retaliation. Accordingly the Motion is GRANTED IN PART and DENIED IN PART.

**SO ORDERED**, this the 12th day of October, 2012.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
